Mr. McCoy, on behalf of the appellant, are you prepared to proceed? Yes, sir. May it please the Court? Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Anthony Miller. In this case, there are two issues of ineffective assistance of counsel, the first being the failure to object to a surveillance video, and the second, the failure to object to hearsay testimony. However, before I get into the specifics of those two claims, I'd like to address this Court's order regarding People v. Veach. This Court can and should address these issues on direct appeal, rather than waiting for a separate collateral proceeding. Because all of the evidence necessary to address these issues is present on this record. In Veach, the 4th District divided ineffective assistance of counsel claims into three broad categories. Which category does this one fall within, in your opinion? Category C. It's egregious? Is that your opinion? Because it would be egregious? Yes. Whether or not the failure to object was the product of oversight, or whether it was based on some strategic decision, it doesn't matter. There's no strategic decision that could justify the failure to object. In this case, there was damning evidence admitted against Mr. Miller, which defense counsel did not object to, and which, as I'll explain later, the rules of evidence would have prohibited. Therefore, again, it doesn't matter what counsel's reasoning was, there's nothing that could have justified it. And would one of those, would the fact that it was damning weigh heavier than rules of evidence, or rules of evidence heavier than damning, or would they both be about the same? I mean, they both factor into it. There was a possible objection here, counsel didn't make it, and this evidence was so prejudicial to his client that it wasn't outweighed by any possible strategic considerations. And there were other witnesses who made certain identifications, at least that's what the record reflects, but were those identifications made on the basis of that video, or that tape, or otherwise? The co-workers' identifications? Yes, three co-workers identified Mr. Miller based on the State showing the surveillance video. This is separate and apart. The State has made an argument here, and I want you to give us your opinion on the propriety of it, that the issue of ineffective assistance was forfeited because it was not raised at the trial court level. Is the defense in this type of a case, is an ineffective assistance claim required to be raised? No, no. And, in fact, there's case law, which we cite in our reply briefs, that forfeiture does not apply to it. In this kind of a situation? Yes. Okay. Yes. And I would just also point out regarding Beach that the State has not pointed to any possible trial strategy for the failure to object. So, again, everything we have here is on the record. Well, you've got the two prongs here, and I think inexorably or inevitably we're going to get into that. Clearly, you would argue as a result of that still shot being shown, the three independent witnesses, it greatly strengthened the State's case to the prejudice of the defendant, correct? Yes. Part of your argument. What evidence would the evidence have been sufficient aside from that? I mean, you have the identification of the alleged victim, and you have some other guy, I think you saw, was it Curry? Yes. Saw the defendant allegedly running from the gas station. Is that sufficient to carry the day? And if not, why not? Well, it's not sufficient to carry the day under the prejudice prong. There are several problems with the victim's identification. First off being he only saw the assailant for a matter of seconds before his glasses get knocked off. And according to the victim himself, he was pretty much blind once he loses his glasses. He also had never met this victim before. He never met the assailant before. He didn't know this person, which distinguishes him from the coworkers who had worked with Mr. Miller for five days a week for several months. And also the victim's identification was cross-racial, which scientific evidence shows is more prone to error in this case. It was also, if you look at the victim's initial description of the assailant, it did not match Mr. Miller. He described the assailant's height, weight, his build, and his age. And quite frankly, he was over four in matching those to Mr. Miller. He was off by over 50 pounds, several inches, and roughly 15 to 20 years in terms of age. And his glasses were knocked off as well? Yeah. I read that. Yes, his glasses were knocked off when he was in the bathroom. So there's many problems with this identification. And as the Illinois Supreme Court has recognized in Keeple v. Lerma, recently there's been a dramatic shift regarding eyewitness identifications, as DNA evidence has shown that eyewitness misidentifications are the single greatest cause of wrongful convictions, more than any other factor combined. And Your Honor also mentioned William Curry, who was the maintenance man at the gas station. There were a few problems with his testimony as well, in that it was contradicted by the surveillance video. He testified that he saw a man running out of the gas station. Well, the surveillance video did not show him running. Also, Mr. Curry said that there was nothing on this person's head. Well, the surveillance video showed that there was a do-rag on his head. And I actually apologize to this Court. I misstated that in my reply brief. I stated that Mr. Curry said that there was something on his head, which I just switched the order of that. All right, so with the admission of the video, you've gone from the victim's identification, which you pointed out has some flaws and problems, Curry's identification has some flaws and problems. Did counsel for the defense argue in closing argument that the still shot taken from the video, as well as the recording, were not clear and could not be the defendant? Was there some plausible reason why he would want them to be admitted? Did he think it was going to somehow help the defendant's case? He did argue that in closing. That wasn't a reasonable trial strategy for not, it wasn't a reasonable justification for not objecting. Because first, his argument was based on the relative size of the assailant in the video, which could have been shown from the back hallway camera, which was the camera that the victim testified to. And we're not contesting that that was authenticated, that that one particular camera was authenticated at least as demonstrative evidence. So he could have made that same argument using that camera and still objected to this rear exit camera, which was the camera or the video that was shown to the three coworkers. And even if not, this, I mean, his argument was this video is ambiguous. This assailant appears slightly bigger than or slightly smaller than Mr. Miller. But that doesn't justify having, it doesn't outweigh three independent witnesses who knew Mr. Miller coming into court and positively testifying that's him. The jury is going to trust those three witnesses over its own subjective looking at this slightly blurry video. So that itself was not a reasonable trial strategy or reasonable justification for not objecting to this video. On the video, did it have some, I mean, the foundational elements were missing. Is that part of the argument as well? Yes. It should not have come in the first place, right? Yes. And that is why in summary. Because the video, the, I guess let me step back. The unique aspect about this case is it's not just one video. There's multiple videos here. And the key to the state's case is linking those two videos together. The back hallway camera and the rear exit camera. And the manager of the gas station, Tony Lennon, testified about the surveillance system. But her testimony was insufficient to show that this program was working correctly. That this program produced accurate time stamps. That the reliability of this process was correct. And her testimony said nothing about how the actual video that was introduced at trial was made. There was no testimony about the copying process. No testimony about the process from which it went from the cameras to the computer. How it was preserved. Yes. How it was copied. Did she ever testify that the video played at trial was the same one that she viewed? No. No, she did not. And in this way, this case closely resembles this court's decision in People v. Flores. Where the copying process was unexplained. And this court held that, therefore, reconstructing that process would just be a matter of guesswork. So, as a result, the adequate foundation was not laid. And counsel should have objected to this testimony. Unless there are further questions on that. Turning to the other instance of ineffective assistance of counsel. Being the failure to object to Officer Weber's testimony. Regarding what John Skinner, another Axiom employee, told him. Now, as the state points out, Officer Weber's testimony in this point is not entirely clear. It's slightly ambiguous. But any plausible explanation for what he was testifying to, it still would be inadmissible. Because it was either irrelevance or it was hearsay. And the two plausibilities are, first, that John Skinner did not tell Officer Weber when Mr. Miller went to lunch. Or he was not asked when he went to lunch. In either case, that would be simply his silence on that point would be irrelevant. It doesn't make any fact of consequence more or less probable. But didn't the judge recognize, though, that this was a problem? And didn't he say, hey, I can't consider that evidence anyway because it's clearly hearsay. And although I don't specifically say or find that he says I won't consider it, he just says I can't consider it. So doesn't that cure part of the problem? Well, but it was a jury trial. So that statement was made in the context of the, I believe, the motion for the directed verdict at the close of evidence. So, yeah, but I think that that statement actually supports our position. The judge recognized the statement was offered to prove the truth of the matter asserted, that it was hearsay, and that counsel should have objected to it. The jury was never given any limiting instruction telling them not to consider it for the truth of the matter asserted. Well, what if his statement established? Isn't there a line of cases that say, well, the answer is so vague and ambiguous, there's really no error in not objecting to it. Because he never really, it wasn't really clear, I think, as to what he's referring to. They ask him the question, he says no, no. It's all very vague, his answer, isn't it? It's not entirely clear. I acknowledge that.  And as Judge Inglesmoth, who heard this evidence, interpreted it as that Officer Weber was testifying, Mr. Skinner told me that Mr. Miller did not go to lunch at 1130. And therefore, this possibility is left open. It's a reasonable interpretation. And considering the judge interpreted it that way, certainly it's possible, if not likely, that the jury interpreted it the same way. So defense counsel then was obligated to take some corrective action, to object, to ask, maybe move for a sidebar, to ask for some clarifying questions, or to ask for a limiting instruction. Sometimes counsel doesn't want to object because they don't want to heighten attention to the question. I mean, here Weber's statement could mean a number of things, some of which have nothing to do with whether the defendant went to lunch at 1130. He sort of passively acknowledged that. It was very vague and ambiguous. But in that case, it still would be irrelevant and inadmissible, I bet. It doesn't necessarily establish prejudice. Well, the prejudice is you've got – I mean, as the judge thought, you have a non-testifying witness who contradicts a main portion of the defendant's testimony that he wasn't present at the gas station at the time of the robbery. Now, is it as prejudicial as the surveillance videos? No, I believe those are more prejudicial. But here we still have an instance of deficient performance and testimony that was admitted, that the jury was not given any limiting instruction on. That certainly hurt the defendant's case. You know, you make a pretty compelling argument that when you add three identifications, you might not otherwise have had. That's a pretty substantial strengthening of the State's case. Is there any other physical evidence that there were some things found that were tied the defendant in to this case? Well, at the Axiom warehouse, they found a tank top, a do-rag, and then in a separate location, a box cutter. None of it was specifically tied to the defendant, either through forensic evidence or through the fact that it was located in a part of the warehouse that the defendant would have exclusive control over. So – and the fact is, a box cutter in a warehouse is not something so unique or surprising to find there that it automatically would tie the defendant to the crime. The argument is that the State's case pretty much stands or falls on the strengths of all of these identifications, the majority of which would not have come in if the video was not admitted. Correct. Well, couldn't they have just testified that – could they have testified to what they observed even if there wasn't a video? But the problem was that they didn't see what happened, and so they were just asked to confirm the video, basically? Well, certainly the victim and Mr. Curry still could have testified. Right. The co-workers were not present for the robbery, so they couldn't have testified to what was on the video. All right. Anything further? No. All right, your time has expired. Thank you very much. We'll have an opportunity to respond when we call you back. Thank you. Mr. Peel, you may proceed. Good morning, Your Honors, Counsel, and may it please the Court. My name is Joanne Burpeel, and I represent the people in regards to this matter. Now, prior to going into my argument about ineffective assistance of counsel, based on this Court's order, we also agree with defense that with regards to Veatch, Veatch does not apply to this case, where in this case we can determine ineffective assistance of counsel based on the merits. All the information to determine ineffective assistance of counsel is of record here. Now, moving to my ineffective assistance of counsel claim, Your Honors, the defense counsel was not deficient in his performance, first with not objecting to the surveillance video nor objecting to alleged hearsay evidence or hearsay testimony. What reason would a reasonable person let that video in? Well, it is the people's position, and they recognize that they did not illustrate this in their brief, that the trial strategy was to point out specifically the timing. As conceded by defense in his brief, timing was the biggest issue here, and defense was trying to show that Mr. Miller was not there at the time that it was allegedly, or what the State is trying to say, that he was there for. They were trying to argue that, or they were not, defense counsel's argument was that the defendant was not at the gas station at the time. The video started at 12.35 p.m. Defense stated that he was there, or the defendant even stated at the trial that he was there from 11.30 to 12.10. It is trial strategy to not object to this, but rather allow it to bolster his argument that this is not the defendant. He wasn't here. He testified to the jury that he was there between 11.30 and 12.10. There are other coworkers that stated that they saw him possibly before 12.30 going to lunch, so it's also just there to bolster that this is not the defendant, as stated in his closing argument. Is that all the video showed? No, didn't the video show the defendant hurrying out of the place or running out of the place, scurrying out of the place? No, Your Honor. The two clips of this video, one is demonstrative evidence that the defense is not arguing against, that the victim was able to identify himself in the video, identify the person that he says hello or hey to while in the bathroom hallway and then entering the bathroom. The second clip is of the defendant walking out or a man walking out or exiting the Road Ranger at, I believe, 12.45-ish. And that is the two clips. And the state was using that to identify the defendant. It was not trying to, or it is under the people's impression that they were not trying to use it to do, or they were just using it to identify that this is the defendant. Using the co-workers to say that, yes, this is the person that I work with. It doesn't show the defendant running out of the bathroom, leaving the Road Ranger after running out of the bathroom? It does not, Your Honor. All it shows is the two clips of the victim entering the bathroom and then a clip of the defendant walking out of the Road Ranger at the exit. Furthermore, Your Honors, it is the people's position that even though... Well, let's let's let's gloss over that. I like your argument making the issue that long. It's all about a matter of timing, which, as you know, there's a substantial problem here going into this, okay? Because whenever you have three additional identifications, you better have some explanation why you now have three witnesses placing your client at the scene of a crime. But the point being is that why would you even want to have these three people get into the time element? Why even bring them in? You're contesting the fact that according to Schweitzer's, you know, identification is flawed because of the glasses. He's really, you know, he's the victim. And now if his identification is flawed, you've now bolstered it by the testimony of three other witnesses, placing the defendant there at some point. Why would you want to do that? Well, it's a possibility that it was meant to, as stated by Your Honor previously with the defense, it's a blurry vision. It's a blurry video. It's not easily to be determined that it is or isn't the defendant. All these co-workers said was these co-workers were not present. These co-workers did not see the crime exist. They don't even know what happened. They just stated, yes, that is the person that I work with that is identifying, yes, the defendant leaving the exit. But it is actually the people's position that the victim, his own testimony, which there is case law saying that the testimony of one victim or one person can bring fault, guilt, or show, prove up for conviction, that. There is a line of cases that say the positive identification by one witness is sufficient to sustain a final guilty. Again, with the underscore, the term positive identification. And that's what they're contesting. Well, it's not what we are contesting, Your Honor. The defendant is incorrect with stating that the defendant or the victim was blind. The victim was nearsighted. I wear glasses. I'm nearsighted. If I take off my glasses, I am able to see all three of you in front of me. I may not see past you, but I can see you. The victim was able to identify the box cutter and the blade out of the box cutter. He was not on his back. The defendant did not attack him from the back. He did not just see him for mere seconds. He saw him when he entered the bathroom, and he saw him when the defendant entered back into the bathroom. So your point is that the victim's testimony alone would carry the day, and this tape doesn't matter. Yes, Your Honor. Then why introduce it? Again, didn't object to it. The state introduced it. Right. That's my point. He didn't object to it. Isn't that really what we're arguing about here this morning? Well, yes, Your Honor. But the fact that he failed or, say, if this court finds that his failure to object is a deficient performance, that still doesn't mean that there was any prejudice to the defendant. With regards to Strickland going to the second prong, as stated, the victim's testimony was sufficient enough to prove guilt. Furthermore, there is William Curry, who identified the defendant as exiting. He was working. He said he was outside throwing out trash, and he saw the defendant leaving the Road Ranger at 1240 p.m., and, yes, he did say that he was running across to Axiom Foods. But, Your Honor, there is a second person identifying the defendant at the Road Ranger at the time that this crime did occur. Counsel, let me ask you one question. In order to satisfy the prejudice prong of Strickland, what does the defendant need to show? Does he need to show that he would have been acquitted? No. He needed to show that but for these deficient actions that the jury could have came to a different conclusion. But, however, Your Honor, it is the people's position that this video, taking out these three identifying witnesses, again, they weren't there. They didn't establish the crime. They didn't see the crime. They didn't bolster the fact that this crime existed. All they stated was that this was my coworker. That is not sufficient, or it is the people's position that that is not sufficient enough to prejudice the defendant. Rather, what evidence was presented to the jury is why they found guilt. The fact that this victim was able to positively identify the defendant, that William Curry was able to state that the defendant was exiting the Road Ranger at this time, that there was a $10 that he exchanged, 10 single dollars, with a coworker who gave him a $10 bill. Furthermore, there was another coworker. Did Curry know the defendant? He said that he had seen him a couple times at the Road Ranger. I believe he said he had a cigarette with him outside a couple times. Furthermore, I completely forgot to say that William Curry said that the defendant or the person leaving the Road Ranger was wearing baggy pants, a light-colored white beater, and identified it as People's Exhibit A, which is the same item or description that the victim stated that the defendant was wearing, black pants and a tank top. Which, according to Mr. McCoy, wasn't really specifically tied to the defendant, was it? Wasn't it found around the area, but not really? Oh, no. The victim actually testified that he saw the defendant leaving with wearing a tank top and black pants, Your Honor. And when the police got there, was the defendant wearing the pants and the tank top that you're referring to? No, Your Honor. When the police arrived, he was wearing a sweatshirt. Well, isn't that important? That was important in the sense that he possibly could have changed. There was enough time for him to have gotten back to Axiom Foods, removed his clothing, and put back on the sweater, which then they did find later around the Axiom Foods, Your Honor. So it just further bolsters the fact that there was sufficient evidence presented before the jury. Regardless of this video that showed the defendant was there at the Road Ranger, attack the victim. Why was the video presented? As Justice Jorgenson alluded to, if the video was controversial, it didn't really bolster the State's case at all. Why admit it? Well, it was first admitted for the demonstrative purposes, Your Honor. As stated and as recognized by defense counsel in his brief, the demonstrative purposes were that the victim pointed himself out, pointed the defendant out, or pointed his attacker out in that it showed. In the closing argument, the State never said that the identifications could be used against the defendant to establish his guilt? In closing argument, the State did present that evidence, or did talk about that evidence, Your Honor, sorry, that they did discuss the identification, but however, just certain comments within a closing argument are not sufficient to show that this was prejudicial towards the defendant. What we do have here is that there was enough information, enough evidence by the victim, by William Curry, and by another coworker identifying and exchanging bills with him, that there was enough evidence here to show the defendant was guilty of this armed robbery and that he did not prejudice his case. Furthermore, with regards to the hearsay evidence, as Your Honor pointed out, this is ambiguous and vague. There is multiple conclusions that people could come to with regards to this statement. The judge came to one conclusion, as the people pointed out, that was an incorrect conclusion, but as pointed out by defense counsel, this is a jury trial. There are multiple people on this jury that could have heard that statement and come to different conclusions, not the ultimate conclusion that this was a hearsay statement, but rather just a regular statement, ambiguous and vague. And when we're looking at the prejudice prong, it was not prejudicial to the defendant's case. Defense counsel? Well, anybody who watches television knows that the statement, Skinner told me, that's somebody, that's hearsay. I mean, just anybody knows that. But that's not what came out. If we look at the wording specifically, question. In fact, you did speak to Mr. Skinner. Is that correct? Answer. Correct. Question. Did he indicate to you the defendant went to lunch at 1130? Answer. That the defendant went to the? No. No. Well, so the hearsay is from the questioner as well as the witness. I mean, it makes it not, I don't like double, triple hearsays, but it makes it even more egregious maybe. Well, in this case, Your Honor, I believe that it's coming to different conclusions. The point is, even if it's hearsay, it's confusing, it's ambiguous, it doesn't establish anything. Yes, Your Honor. Hearsay notwithstanding. Hearsay notwithstanding, yes, Your Honor. It is just too ambiguous because multiple conclusions can come from it. Defense counsel says it must be one thing, but when I read it, it was, I could have interpreted it as multiple things. In other words, admitted for the truth of what? That's what the person is left to ponder. Yes, Your Honor. As further pointing out, there is sufficient evidence here, regardless of this video, that would have showed that the defendant or the defendant committed this armed robbery. It was not prejudicial to the defendant to have this video admitted. One, because part of it was demonstrative. The three identifying witnesses, yes, identified the victim or identified the defendant, but did not bolster or did not speak of the crime, did not speak of defendants committing the crime. It just was identifying, saying that that, yes, is my coworker, rather than there was more sufficient evidence with regards to the victim's testimony, with regards to William Curry's testimony and the evidence found. So these three ideas are merely cumulative. That's your argument? Yes, Your Honor. Okay. Okay. If there are no further questions, Your Honors. Thank you very much, Ms. McKeown. Thank you, Your Honors. Mr. McCoy, you may respond. Opposing counsel argues that trial counsel's strategy was to show that the defendant was not there at the time of the crime. If that's the case, there was simply no reason to let in this video, which then further allowed three identifications showing that the defendant was at the Road Ranger at this time. And even defense counsel's closing argument was that this video was ambiguous. So whatever ambiguities certainly does not, as I said before, outweigh these three other identifications. Counsel, let me ask you this. What objection should defense counsel have made? Well, counsel could have objected in terms of foundation when the video was first submitted. Counsel could have also objected when all three of these coworkers were testifying and when they attempted or when they did identify Mr. Miller on the video. Turning to the prejudice prong, the prejudice is established if there's a probability sufficient to undermine confidence in the outcome. And here, if this video had not been admitted, this trial looks very different. And it's just not one that we can have confidence in the outcome. Now, opposing counsel talked about nearsightedness, but there are obviously different degrees of nearsightedness. And the victim himself testified that he is, quote, pretty much blind without his glasses. So his identification simply does not, it is not sufficient, one sufficient to have confidence in the outcome of this verdict without these three other identifications. So with the evidence that would be left if we accepted your arguments, we have the incorrect or the problematic identification of the victim. We have Curry identifying or misidentifying a piece of clothing that somebody is wearing. And they could have, I suppose they could have gotten the work records for the defendant and introduced those the proper way. But if we accept the hearsay statement argument that you've made, then we don't even know what time he goes to dinner usually. Yeah, I mean, there's conflicting testimony from the different coworkers about when the lunch break starts and if they have to sign out or not. But none of it is sufficient to, well, to show that there was not prejudice from these errors. Unless there are further questions. And there was no specific forensic testing done on any of the clothing or anything else that might have produced DNA or produced fingerprints or anything? No forensic testing done at all in this case. Okay. Therefore, Mr. Miller would just ask this Court to reverse his conviction and remand the case for new trial. Thank you. Thank you. I'd like to thank both counsel for the quality of the arguments here this morning. The matter will, of course, be taken under advisement and a written decision will be issued in due course. We stand adjourned for the morning. Thank you.